## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCHULTZ BARREL & DRUM, INC., | § | CASE NO. _____ |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | JURY TRIAL DEMANDED |
| | § | |
| RICHMOND MACHINE & EQUIPMENT, | § | |
| LLC, and BART KLINE, individually, | § | |
| | § | |
| DEFENDANTS. | § | |

## PLAINTIFF'S COMPLAINT

Plaintiff Schultz Barrel & Drum, Inc. ("Schultz Barrel" or "Plaintiff"), by and through its attorneys, Nelson Mullins Riley & Scarborough LLP, and for its Complaint against Defendants Richmond Machine & Equipment, LLC ("Richmond Machine" or the "Company") and Bart Kline ("Kline") (together, "Defendants"), states and alleges as follows:

### I.     NATURE OF THE ACTION

1.     This is an action to recover $396,456.25 that Schultz Barrel paid to Richmond Machine for industrial drum reconditioning equipment that Richmond Machine never built and never delivered.  Rather than use Schultz Barrel's payments to manufacture the equipment for which those payments were made, Richmond Machine's owner diverted those funds to his own personal use—a diversion the Owner himself has admitted, acknowledging that the funds paid by Schultz Barrel were spent on personal expenses, including medical bills, rather than on the manufacture of the equipment.

2.     The parties contracted ("Contract") for the delivery of the equipment within five months of Schultz Barrel's deposit.  That deadline passed with nothing delivered.  Rather than

perform or return Schultz Barrel's money, Richmond Machine issued a further invoice demanding the final two installments—$102,042.00—for three machines identified by serial numbers that, upon information and belief, do not exist.

3.      The admission by Richmond Machine regarding the diverted funds was made in connection with a site visit to Richmond Machine's facility by a representative of Schultz Barrel's equipment lender, which revealed only a bare machine frame—and no completed machines—despite Richmond Machine's receipt of $396,456.25 and its issuance of an invoice demanding final payment for three machines identified by serial number.

4.      Schultz Barrel accordingly brings claims for breach of contract, fraud and fraudulent inducement, conversion, unjust enrichment, and violation of the Pennsylvania Uniform Voidable Transactions Act, and seeks, among other relief, compensatory and punitive damages, avoidance of the voidable transfers, imposition of a constructive trust and an accounting, and a determination that Richmond Machine is the alter ego of Bart Kline, the Owner, such that the Company's liabilities may be imposed upon the Owner personally and satisfied from his personal assets and any assets under his control.

## II.    PARTIES

5.      Plaintiff Schultz Barrel & Drum, Inc. is a corporation organized and existing under the laws of the State of Illinois with its principal place of business located at 4800 S. Morgan Street, Chicago, Illinois 60609.  Schultz Barrel is engaged in the business of reconditioning industrial steel drums and containers.

6.      Defendant Richmond Machine & Equipment, LLC is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania with its principal

place of business located at 298 Keystone Drive, Bethlehem, Pennsylvania 18020.  Richmond

Machine holds itself out as a designer, manufacturer, and seller of drum reconditioning equipment.

Upon information and belief, the sole member of Richmond Machine is Defendant Bart Kline, a

citizen of the Commonwealth of Pennsylvania.

7.      Defendant Bart Kline is an adult individual and, upon information and belief, a

citizen of the Commonwealth of Pennsylvania residing in Northampton County, Pennsylvania.

Upon information and belief, Kline is the owner and managing member of Richmond Machine

and at all relevant times exercised complete dominion and control over Richmond Machine, its

operations, its bank accounts, and its dealings with Schultz Barrel.  Kline is sued both in his

individual capacity, for the tortious conduct in which he personally participated, and as the alter

ego of Richmond Machine.

### III.    JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because

the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and

is between citizens of different states.  Plaintiff is a citizen of Illinois, where it is incorporated and

maintains its principal place of business.  The citizenship of a limited liability company is

determined by the citizenship of each of its members.  *See Zambelli Fireworks Mfg. Co. v. Wood*,

592 F.3d 412, 420 (3d Cir. 2010).  Upon information and belief, the sole member of Richmond

Machine is Kline, a citizen of Pennsylvania; Richmond Machine is therefore a citizen of

Pennsylvania.  Kline is a citizen of Pennsylvania.  Complete diversity accordingly exists between

Plaintiff and Defendants.

9.      This Court has personal jurisdiction over Richmond Machine because it is a

Pennsylvania limited liability company with its principal place of business in this District, and

over Kline because, upon information and belief, he is domiciled in Pennsylvania and committed the tortious acts alleged herein in substantial part within this District.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because all Defendants reside in this District, and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including the manufacture—or failure to manufacture—of the Equipment at Defendants' facility located at 298 Keystone Drive, Bethlehem, Pennsylvania 18020, and the receipt and diversion of Plaintiff's funds through accounts maintained in this District.

## IV.   FACTUAL BACKGROUND

### A.   The Richmond Machine Contracts

11.     On or about January 31, 2025, Richmond Machine issued Quotation No. QT-2608 to Schultz Barrel for the purchase of three (3) pieces of drum reconditioning equipment (collectively, the "Equipment"), consisting of: (a) one (1) Richmond RM3 Fully Automatic De-denting Machine, at a discounted price of $110,670.00; (b) one (1) Richmond RM3 Fully Automatic Vertical Double End Chime Straightener, at a discounted price of $110,670.00; and (c) one (1) Richmond RM3 Vertical Fully Automatic Paint System and Booth, at a discounted price of $118,800.00.  The total contract price was $340,140.00.  A true and correct copy of Quotation No. QT-2608 is fully incorporated herein as Exhibit A.

12.     The terms of Quotation No. QT-2608 required Schultz Barrel to pay a deposit equal to forty percent (40%) of the total contract price, or $136,056.00, with the remaining balance to be paid in four (4) equal monthly installment payments of $51,021.00 each.  Pursuant to the terms of QT-2608, delivery would occur within five (5) months of the deposit payment.

13.     Schultz Barrel accepted the terms of Quotation No. QT-2608, and the parties entered into a binding contract (the "Contract") for the manufacture, delivery, and installation of the Equipment.  Upon information and belief, Kline personally prepared, approved, or directed each of the representations contained in Quotation No. QT-2608 and in the invoices and communications described below.

14.     On or about April 14, 2025, Richmond Machine issued Quotation No. QT-2616 to Schultz Barrel for the purchase of one (1) Richmond Automatic Digital DOT Approved Pressure Decay Tester (the "Tester"), at a list price of $66,265.00 less a fifteen percent (15%) discount, for a total price of $56,325.25.

15.     Quotation No. QT-2616's special terms called for a thirty-five percent (35%) deposit, with the balance due upon delivery or, at the buyer's option, financed by Richmond Machine in equal installments.  A true and correct copy of Quotation No. QT-2616 is fully incorporated herein as Exhibit B.

16.     Schultz Barrel accepted Quotation No. QT-2616, and the parties thereby supplemented their agreement to include the Tester, such that the Contract, as defined herein, encompasses Quotation Nos. QT-2608 and QT-2616 and the invoices issued thereunder.  Schultz Barrel did not merely pay the required 35% deposit on the Tester; as set forth below, it paid the full $56,325.25 purchase price, which Richmond Machine acknowledged receiving in writing. Like the Equipment, the Tester was never manufactured, tendered, or delivered.  The term "Equipment" as used hereinafter includes the Tester.

17.     In reliance on the Contract and Richmond Machine's delivery representations, Schultz Barrel forwent the purchase of comparable equipment from other manufacturers,

committed its Chicago facility's production planning to the anticipated Equipment, and undertook substantial financing obligations, as set forth below.

### B. The LEAF Capital Financing

18.     To facilitate payment of the $136,056.00 initial deposit, Schultz Barrel obtained financing through LEAF Capital Funding, LLC ("LEAF Capital") pursuant to a Finance Agreement dated February 13, 2025 (the "Finance Agreement"), a true and correct copy of which is attached hereto as Exhibit C.  Under the Finance Agreement, LEAF Capital agreed to advance $240,140.00 to Richmond Machine directly on behalf of Schultz Barrel, and Schultz Barrel agreed to repay the principal amount over 63 months at $5,235.05 per month.  Michael Schultz, Schultz Barrel's President, also executed a personal guaranty in connection with the LEAF Capital financing.

19.     On February 13, 2025, Richmond Machine issued Commercial Invoice No. 5802 to Schultz Barrel in the amount of $136,056.00, representing the forty percent (40%) deposit on the Equipment, which was paid in full by LEAF Capital directly to Richmond Machine on or about February 20, 2025.  True and correct copies of Invoice Nos. 5802, 5806, 5807, and 5817 are attached hereto collectively as Exhibit D.  The invoice directed that payment be made to Richmond Machine's account at Embassy Bank for the Lehigh Valley, styled the "RM GENERAL ACCOUNT."

20.     The $136,056.00 deposit was paid in full by LEAF Capital directly to Richmond Machine on or about February 20, 2025, as Richmond Machine itself confirmed on subsequent invoices stating "DEPOSIT: 40 % - PAID 2/20/2025."

**C.   Schultz Barrel's Installment Payments**

21.    Consistent with the Contract's payment terms, Schultz Barrel timely made the following payments to Richmond Machine, true and correct copies of the payment instruments and Richmond Machine's written payment receipt being attached hereto collectively as Exhibit E:

(a)   Installment Payment 1—$51,021.00 (per Invoice No. 5806, dated March 13, 2025): Schultz Barrel paid this installment via two instruments: a cashier's check in the amount of $50,000.00 dated March 19, 2025 (Check No. 2360525406), and a check in the amount of $1,021.00 dated March 21, 2025, for the balance remaining on Invoice No. 5806;

(b)   Installment Payment 2—$51,021.00 (per Invoice No. 5807, dated April 18, 2025): Schultz Barrel paid this installment by check in the amount of $51,021.00 dated April 14, 2025 (Check No. 2274);

(c)   Installment Payment 3—$102,042.00 (per Invoice No. 5817, dated June 2, 2025): Schultz Barrel paid this installment by check in the amount of $102,042.00; and

(d)   Pressure Decay Tester—$56,325.25 (per Invoice No. 5814, dated May 1, 2025): Schultz Barrel paid Richmond Machine's quote for an additional Richmond Automatic Digital DOT Approved Pressure Decay Tester (Quote No. QT-2616) in full, by check (Check No. 2315), received by Richmond Machine on May 19, 2025, as confirmed by Richmond Machine's own payment receipt.

22.    In total, Schultz Barrel has paid Richmond Machine the sum of $396,456.25, comprised of: (a) the $136,056.00 deposit funded through LEAF Capital; (b) two installment payments totaling $102,042.00; (c) the installment payment of $102,042.00; and (d) the

$56,325.25 payment for the Pressure Decay Tester. Schultz Barrel remains obligated to LEAF Capital for repayment of the $240,140.00 financed principal, at $5,235.05 per month over 63 months, and Michael Schultz remains personally exposed under his guaranty.

23.     Each of these payments was made for a specific, designated purpose that Defendants themselves identified in their invoices: to fund the manufacture and delivery of the specific machines described in Quotation No. QT-2608 and Quote No. QT-2616. Defendants accepted each payment with knowledge of, and subject to, that designated purpose.

### D.   Defendants' Failure to Deliver and Continued Demands for Payment

24.     Notwithstanding receipt of $396,456.25 in payments, Richmond Machine has failed to deliver any of the Equipment. The Contract specified delivery within five (5) months of the deposit payment, placing the expected delivery date on or before approximately July 2025. As of the date of this Complaint, the Equipment has not been delivered, and Richmond Machine has not provided any credible schedule for delivery.

25.     On June 2, 2025, Richmond Machine issued Invoice No. 5817, purporting to be for installment payments 3 and 4, in the combined amount of $102,042.00, with a balance due of $102,042.00 and no credit or offset for the failure to deliver the Equipment. The invoice for the first time listed serial numbers for the three machines—RM3AD25B0O (Dedenter), RM3ADEC25WZO (Chime Straightener), and RM3AP25A8X (Paint System)—creating the false impression that completed, serialized machines existed. The Equipment has never been tendered or delivered.

26.    Richmond Machine's demand for additional payment on Invoice No. 5817, without having tendered delivery of any Equipment, and its continued failure and refusal to deliver or to provide adequate assurance of performance, constitute an anticipatory repudiation of the Contract.

**E.    The Site Visit and Kline's Admission That He Took the Money**

27.    After the delivery deadline passed, a LEAF Capital representative conducted a site visit at Richmond Machine's facility at 298 Keystone Drive, Bethlehem, Pennsylvania.  The site visit revealed only a bare frame—no completed machines, no serialized units, and no work in progress remotely consistent with the receipt of $396,456.25 in customer payments.

28.    During and in connection with that site visit, Kline, Richmond Machine's owner, admitted that the funds paid by Schultz Barrel had been spent on his personal expenses, including personal medical bills, rather than on the manufacture of the Equipment.

29.    Kline's admission establishes that Schultz Barrel's payments were not applied to the purpose for which they were entrusted to Richmond Machine.  Instead, upon information and belief, Kline caused Richmond Machine to transfer Schultz Barrel's funds out of the "RM GENERAL ACCOUNT" to himself, to his creditors, and/or to persons or entities he owns or controls, for his personal benefit, without any consideration flowing to Richmond Machine.

**F.    Kline's Domination of Richmond Machine and Abuse of the Corporate Form**

30.    Upon information and belief, at all relevant times Kline so dominated and controlled Richmond Machine that it had no separate existence of its own, and Kline used that domination and control to perpetrate the fraud and injustice alleged herein.  In particular, upon information and belief:

(a)    Kline substantially intermingled Richmond Machine's funds and affairs with his own personal funds and affairs, including by paying his personal expenses and personal medical bills directly from customer deposits held in Richmond Machine's accounts;

(b)   Kline caused Richmond Machine to be grossly undercapitalized for the business in which it was engaged, such that it could not perform a $340,140.00 manufacturing contract without immediately consuming its customer's progress payments for non-corporate purposes;

(c)    Kline siphoned funds from Richmond Machine for his personal benefit at the very time Richmond Machine owed contractual and legal obligations to Schultz Barrel;

(d)   Kline operated Richmond Machine interchangeably with one or more affiliated entities under his common ownership and control operating from the same 298 Keystone Drive facility, including, upon information and belief, Richmond Machine Welding LLC (formerly Richmond Machine & Welding LLC), without observing the separateness of those entities; and

(e)    Kline used the limited liability company form of Richmond Machine as a facade and instrumentality to obtain and divert Schultz Barrel's money for himself while attempting to shield himself from personal responsibility.

31.    Observance of the fiction of Richmond Machine's separate corporate existence would, under these circumstances, sanction fraud and promote injustice.  Kline is the alter ego of Richmond Machine, and each Defendant is jointly and severally liable for the obligations and liabilities of the other as alleged herein.

## V.   CAUSES OF ACTION

### COUNT I—BREACH OF CONTRACT
*(Against Richmond Machine, and against Kline as its alter ego)*

32.   Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

33.   A binding contract existed between Schultz Barrel and Richmond Machine for the manufacture and delivery of the Equipment at a total price of $340,140.00 (Ex. A), with delivery to be made within approximately five (5) months of the deposit payment, together with the related agreement for the Pressure Decay Tester in the amount of $56,325.25 (Ex. B).

34.   Schultz Barrel fully performed its obligations, paying Richmond Machine a total of $396,456.25 in a timely manner.

35.   Richmond Machine materially breached the Contract by: (a) failing to deliver the Equipment within the agreed delivery window; (b) failing to deliver the Equipment at any time despite receipt of all payments; (c) demanding continued installment payments despite failing to deliver any Equipment or provide adequate assurance of performance; and (d) otherwise failing to perform its obligations under the Contract.

36.   The Contract is a contract for the sale of goods governed by Article 2 of the Uniform Commercial Code as codified in Pennsylvania, 13 Pa. C.S. § 2101 et seq.  Richmond Machine's failure to deliver the Equipment breached its fundamental obligation to transfer and deliver the goods, 13 Pa. C.S. § 2301, and its demand for payment without tender of delivery is inconsistent with its tender obligations under 13 Pa. C.S. § 2503.

37.   Independently, when reasonable grounds for insecurity arose—including the blown delivery date, the empty factory floor, and Kline's admitted diversion of funds—Richmond

Machine failed to provide adequate assurance of due performance, which itself constitutes a repudiation of the Contract under 13 Pa. C.S. § 2609. Richmond Machine's conduct further constitutes an anticipatory repudiation under 13 Pa. C.S. § 2610.

38.    Schultz Barrel is entitled to cancel the Contract and to recover so much of the price as has been paid, together with damages for non-delivery and incidental and consequential damages, pursuant to 13 Pa. C.S. §§ 2711, 2713, and 2715.

39.    As a direct and proximate result of Richmond Machine's breach, Schultz Barrel has suffered damages in an amount to be proven at trial, including but not limited to: (a) the full amount paid to Richmond Machine, $396,456.25; (b) continuing obligations to LEAF Capital under the Finance Agreement, including finance charges; (c) lost profits and business opportunity resulting from the absence of the Equipment; (d) costs incurred in connection with the transaction; and (e) incidental and consequential damages flowing from Richmond Machine's breach.

40.    Because Kline is the alter ego of Richmond Machine, as alleged above, Kline is jointly and severally liable for all amounts owed by Richmond Machine under this Count.

## COUNT II—FRAUD, FRAUDULENT INDUCEMENT, AND FRAUDULENT MISREPRESENTATION
*(Against Richmond Machine and Kline, individually; pleaded in*
*the alternative to Count I where required)*

41.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

42.    Defendants made material representations of fact to Schultz Barrel to induce it to enter into the Contract and to continue making payments, including but not limited to: (a) in Quotation No. QT-2608 dated January 31, 2025, that the Equipment would be manufactured and

delivered within five (5) months of the deposit; (b) in Invoice Nos. 5802 (February 13, 2025), 5806 (March 13, 2025), 5807 (April 18, 2025), and 5814 (May 1, 2025), that the payments demanded were progress payments toward machines actually being manufactured for Schultz Barrel; and (c) in Invoice No. 5817 (June 2, 2025), that three completed, serialized machines—bearing serial numbers RM3AD25B0O, RM3ADEC25WZO, and RM3AP25A8X—existed and awaited only final installment payments.

43.     Upon information and belief, each of these representations was made, directed, or approved by Kline personally, as Richmond Machine's owner and managing member and the person in control of its quotations, invoices, and bank accounts.  In addition, Defendants accepted Schultz Barrel's payments with no present ability or intention to manufacture or deliver the Equipment within the agreed timeframe, or at all, and instead diverted those payments to the Owner's personal use.

44.     These representations were false when made, or were made recklessly without knowledge of their truth.  A statement of present intention that is false when uttered constitutes fraud.  Defendants had no present intention or ability to manufacture and deliver the Equipment on the represented schedule, or at all; instead, Kline took Schultz Barrel's payments as they arrived and spent them on his personal expenses, including medical bills, as he later admitted.  The recitation of fabricated serial numbers on Invoice No. 5817, at a time when the factory contained only a bare frame, was a knowing and deliberate falsehood designed to extract two further installment payments totaling $102,042.00.

45.     Defendants made these representations with the intent to induce Schultz Barrel to enter into the Contract, to obtain financing through LEAF Capital, and to continue making installment payments.  Schultz Barrel justifiably relied on the representations, entering into the

Contract, incurring the LEAF Capital financing obligation and personal guaranty, and paying $396,456.25, and that reliance proximately caused Schultz Barrel's injury. *See Gibbs v. Ernst*, 538 Pa. 193, 647 A.2d 882, 889 (1994) (elements of fraudulent misrepresentation).

46.     Further evidencing Defendants' fraudulent intent, a LEAF Capital representative confirmed that a site visit to Richmond Machine's facility revealed only a bare frame with no completed machines, and Kline admitted the funds paid by Schultz Barrel had been spent on personal expenses, including medical bills, rather than on manufacture of the Equipment.

47.     Kline is personally liable for this fraud under Pennsylvania's participation theory, because a corporate officer or member who personally participates in tortious conduct is liable for that conduct regardless of the corporate form. *Wicks v. Milzoco Builders, Inc.*, 503 Pa. 614, 621, 470 A.2d 86, 89–90 (1983) (liability is imposed "on the individual as an actor rather than as an owner" and "attaches where the record establishes the individual's participation in the tortious activity."). Kline did not merely preside over a company that breached a contract; he personally conceived, directed, and profited from the misrepresentations alleged herein. *See Id*. at 90.

48.     Plaintiff's fraud claim is not barred by the gist of the action doctrine or the economic loss doctrine because it arises from Defendants' fraudulent inducement of the Contract and the payments—misrepresentations collateral to, and antecedent of, the contractual duty to deliver—and from a broader societal duty not to obtain money by deception, not from the mere non-performance of the Contract itself.

49.     As a direct and proximate result of Defendants' fraud, Schultz Barrel has been damaged in an amount in excess of $396,456.25, plus its ongoing obligations to LEAF Capital and consequential damages. Because Defendants' conduct was outrageous, willful, wanton, and

undertaken with reckless indifference to Schultz Barrel's rights, Schultz Barrel is further entitled to punitive damages in an amount to be determined at trial.

## COUNT III—CONVERSION
*(Against Richmond Machine and Kline, individually; pleaded in the alternative)*

50.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

51.     Schultz Barrel delivered $396,456.25 in identifiable funds to Richmond Machine for a specific, designated purpose stated on the face of Defendants' own invoices: the manufacture and delivery of the specific machines identified in Quotation No. QT-2608 and Quote No. QT-2616.

52.     Defendants deprived Schultz Barrel of its right in those funds, without Schultz Barrel's consent and without lawful justification, by taking the funds and applying them to Kline's personal expenses rather than to the designated purpose for which the funds were entrusted. *See Shonberger v. Oswell*, 365 Pa. Super. 481, 530 A.2d 112, 114 (1987) (conversion lies for deprivation of another's right of property in, or use or possession of, a chattel without the owner's consent and without lawful justification).

53.     Kline personally participated in, directed, and benefited from the conversion, and is personally liable therefor under the participation theory, in addition to his liability as Richmond Machine's alter ego.

54.     The wrong alleged in this Count is not the mere failure to perform the Contract, but the independent tortious misappropriation of funds entrusted for a specific purpose—conduct that violates duties imposed by law as a matter of social policy, not merely duties arising from the parties' agreement.

55.    As a direct and proximate result of the conversion, Schultz Barrel has been damaged in the amount of $396,456.25, plus interest.  Because the conversion was willful, outrageous, and undertaken for Kline's personal enrichment, Schultz Barrel is further entitled to punitive damages.

## COUNT IV—UNJUST ENRICHMENT
*(Against Richmond Machine and Kline, individually; pleaded in the alternative)*

56.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

57.    Schultz Barrel conferred a substantial benefit upon Richmond Machine by paying $396,456.25 in connection with the Contract.  Richmond Machine appreciated and retained that benefit without providing the Equipment or otherwise performing, and without legal justification.

58.    Kline, in turn, personally appreciated, accepted, and retained the benefit of Schultz Barrel's funds by taking those funds and applying them to his personal expenses, including his medical bills.  Kline gave no consideration for those funds, and there is no contract between Kline and Schultz Barrel that governs his receipt of them.

59.    Under the circumstances, it would be inequitable and unconscionable for either Richmond Machine or Kline to retain the benefit of Schultz Barrel's payments without payment of value.  Schultz Barrel is entitled to restitution from each Defendant of all amounts by which he or it was unjustly enriched, plus interest, and to the imposition of a constructive trust and/or equitable lien upon the funds and upon any property acquired with or traceable to the funds.

## COUNT V—FRAUDULENT TRANSFER IN VIOLATION OF THE PENNSYLVANIA UNIFORM VOIDABLE TRANSACTIONS ACT, 12 PA. C.S. § 5101 ET SEQ.
*(Against Richmond Machine as transferor and Kline as transferee)*

Page **16** of **22**

60.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

61.     Schultz Barrel is a "creditor" of Richmond Machine holding a "claim" within the meaning of 12 Pa. C.S. § 5101(b), which defines "claim" broadly to include a right to payment whether or not reduced to judgment, liquidated, disputed, or contingent.  Schultz Barrel's claim arose no later than February 2025, before or at the time of the transfers described below.

62.     Upon information and belief, beginning in or about February 2025 and continuing thereafter, Richmond Machine, at Kline's direction, transferred to Kline, to his creditors (including medical providers), and/or to persons or entities owned or controlled by Kline, funds paid by Schultz Barrel and/or other assets of Richmond Machine (the "Transfers").

63.     The Transfers were made with actual intent to hinder, delay, or defraud Richmond Machine's creditors, including Schultz Barrel, in violation of 12 Pa. C.S. § 5104(a)(1).  Numerous badges of fraud enumerated in 12 Pa. C.S. § 5104(b) are present, including without limitation: the Transfers were to an insider, § 5104(b)(1); the transferor retained possession or control of the property transferred, § 5104(b)(2); the Transfers were concealed from Schultz Barrel while Defendants continued to demand installment payments, § 5104(b)(3); the value of the consideration received by Richmond Machine was not reasonably equivalent to the value of the assets transferred, § 5104(b)(8); Richmond Machine was insolvent or became insolvent shortly after the Transfers, § 5104(b)(9); and the Transfers occurred shortly after substantial debt to Schultz Barrel was incurred, § 5104(b)(10).

64.     In the alternative, the Transfers are constructively voidable under 12 Pa. C.S. § 5104(a)(2) and § 5105 because Richmond Machine did not receive reasonably equivalent value in exchange for the Transfers, and Richmond Machine (a) was engaged or about to engage in a

business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction; (b) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due; and/or (c) was insolvent at the time of the Transfers or became insolvent as a result of them.

65.    Kline was the first transferee of the Transfers, or the person for whose benefit the Transfers were made, within the meaning of 12 Pa. C.S. § 5108(b)(1).

66.    Pursuant to 12 Pa. C.S. §§ 5107 and 5108, Schultz Barrel is entitled to: (a) avoidance of the Transfers to the extent necessary to satisfy its claim; (b) an attachment or other provisional remedy against the assets transferred or other property of the transferee in accordance with applicable law; (c) an injunction against further disposition by Richmond Machine and/or Kline of the assets transferred or of other property; (d) appointment of a receiver to take charge of the assets transferred or of other property of the transferee, if warranted; (e) judgment against Kline, as first transferee or beneficiary of the Transfers, for the value of the assets transferred, up to the amount of Schultz Barrel's claim; and (f) any other relief the circumstances may require.

## COUNT VI—PIERCING THE CORPORATE VEIL / ALTER EGO LIABILITY
*(Against Kline, as to all liabilities of Richmond Machine)*

67.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

68.    Although a member of a Pennsylvania limited liability company is not ordinarily liable for the company's obligations, Pennsylvania courts will disregard the corporate form whenever necessary to prevent its use to defeat public convenience, justify wrong, protect fraud, or defend crime. The factors Pennsylvania courts consider include undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs, and use

of the corporate form to perpetrate fraud.  *See Lumax Indus., Inc. v. Aultman*, 543 Pa. 38, 669 A.2d 893, 895 (1995); *Mortimer v. McCool*, 255 A.3d 261 (Pa. 2021); *Advanced Tel. Sys., Inc. v. Com-Net Prof'l Mobile Radio, LLC*, 846 A.2d 1264 (Pa. Super. Ct. 2004).

69.     As alleged above, upon information and belief: (a) Kline substantially intermingled Richmond Machine's funds with his own, paying his personal expenses and medical bills from customer deposits; (b) Kline caused and maintained Richmond Machine in a grossly undercapitalized state relative to its contractual undertakings; (c) Kline siphoned Richmond Machine's assets for his personal benefit while the Company owed performance and payment obligations to Schultz Barrel; (d) Kline used Richmond Machine's form as a facade to obtain nearly $400,000.00 from Schultz Barrel by deception; and (e) Kline operated Richmond Machine interchangeably with affiliated entities under his common control at the same facility, disregarding the separateness of each.

70.     Kline's domination and abuse of Richmond Machine's corporate form was a proximate cause of Schultz Barrel's injury.  Adherence to the fiction of Richmond Machine's separate existence would sanction fraud and work a manifest injustice upon Schultz Barrel.

71.     Accordingly, the corporate veil of Richmond Machine should be pierced, and Kline should be held jointly and severally liable, as the alter ego of Richmond Machine, for all liabilities of Richmond Machine to Schultz Barrel adjudged in this action, including under Counts I through V, with recourse to all assets held by the Owner or under his control, including assets titled in the names of nominees, family members, or affiliated entities that are traceable to Schultz Barrel's funds or that constitute the fruits of the misappropriation, and including, to the extent applicable, assets of affiliated entities under the enterprise theory recognized in *Mortimer v. McCool*, 255 A.3d 261 (Pa. 2021).  In addition or in the alternative, to the extent Kline caused Richmond

Machine's assets or business to be shifted to affiliated entities under his common ownership and control, those entities constitute a single enterprise with Richmond Machine and their assets should likewise be available to satisfy Schultz Barrel's claims.

## COUNT VII—CONSTRUCTIVE TRUST AND ACCOUNTING
### *(Against Both Defendants)*

72.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

73.     Defendants acquired and hold Schultz Barrel's funds, and property traceable thereto, under circumstances of fraud, conversion, and unjust enrichment such that Defendants would be unjustly enriched if permitted to retain them, and equity therefore impresses a constructive trust upon those funds and all property traceable to them for the benefit of Schultz Barrel. *See Buchanan v. Brentwood Fed. Sav. & Loan Ass'n*, 457 Pa. 135, 320 A.2d 117 (1974).

74.     Schultz Barrel is entitled to a full accounting from Defendants of the receipt, disposition, and present location of all funds paid by Schultz Barrel, including all withdrawals, transfers, and expenditures from the Embassy Bank Account and any related or successor accounts from February 1, 2025 to the present.

75.     Schultz Barrel is further entitled to an order tracing its funds into any asset acquired therewith, impressing a constructive trust upon each such asset, and directing disgorgement and turnover of the same.

## VI.    JURY DEMAND

Plaintiff Schultz Barrel & Drum, Inc. hereby demands trial by jury on all issues so triable.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff Schultz Barrel & Drum, Inc. respectfully requests that this Court enter judgment in its favor and against Defendants Richmond Machine & Equipment, LLC and Bart Kline, jointly and severally, and grant the following relief:

(a)   Compensatory damages in an amount to be proven at trial, including all amounts paid to Richmond Machine and all resulting liabilities incurred by Schultz Barrel, including its obligations to LEAF Capital;

(b)   Consequential and incidental damages, including lost profits and business opportunity, in an amount to be proven at trial;

(c)   Punitive damages as permitted by law in connection with Counts II and III;

(d)   Avoidance of the Transfers pursuant to 12 Pa. C.S. § 5107(a)(1), and judgment against Kline as first transferee or beneficiary pursuant to 12 Pa. C.S. § 5108(b), for the value of the assets transferred up to the amount of Plaintiff's claim;

(e)   Preliminary and permanent injunctive relief restraining Defendants from further transferring, dissipating, encumbering, or concealing the funds paid by Schultz Barrel, any property traceable thereto, and any other assets subject to avoidance, pursuant to 12 Pa. C.S. § 5107(a)(3) and the Court's equitable powers;

(f)   Imposition of a constructive trust and/or equitable lien upon the funds paid by Schultz Barrel and all property acquired with or traceable to such funds, in whosever hands they may be found;

(g)   Appointment of a receiver over the assets transferred or over other property of the transferee, if warranted, pursuant to 12 Pa. C.S. § 5107(a)(3)(ii);

(h)    An accounting of all funds received by Defendants from or on behalf of Schultz

Barrel and the disposition thereof;

(i)    A declaration that Kline is the alter ego of Richmond Machine and is jointly and

severally liable for all of Richmond Machine's liabilities to Schultz Barrel;

(j)    Prejudgment interest at the lawful rate of six percent (6%) per annum, 41 P.S. §

202, on all amounts wrongfully obtained and withheld;

(k)    Attorneys' fees and costs of this action to the extent permitted by law or contract;

and

(l)    Such other and further relief as this Court deems just and proper.

Respectfully submitted,

**NELSON MULLINS RILEY &
SCARBOROUGH LLP**

By:  */s/ Devarati Das*
Devarati Das, Esquire
PA Bar No. 338821
Devarati.das@nelsonmullins.com

1000 Westlakes Drive, Suite 275

Berwyn, PA 19312
610.943.5385 (Telephone)
484.234.2035 (Facsimile)

**ATTORNEY FOR PLAINTIFF
SCHULTZ BARREL & DRUM, INC.**